WILLIAM R. SAUNDERS and MARY J. SAUNDERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Saunders v. Commissioner
Docket No. 1236-75
United States Tax Court
T.C. Memo 1977-427; 1977 Tax Ct. Memo LEXIS 16; 36 T.C.M. (CCH) 1746; T.C.M. (RIA) 770427; December 19, 1977, Filed J. S. Dworkin, for the petitioners. J. E. Dunn, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency in petitioners' Federal income taxes for the taxable year 1972 in the amount of $998.20. The sole issue for our determination is whether certain expenditures during that year were incurred by petitioners "while away from home" within the meaning of section 162(a)(2) [1] and, thus, are properly deductible as ordinary and necessary business expenses. *17 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners are William R. Saunders and Mary J. Saunders, husband and wife, who resided in Cleveland, Ohio at the time the petition was filed herein. They filed joint Federal income tax returns for the taxable year 1972 with the Internal Revenue Service at Cincinnati, Ohio. Petitioners have resided at the same address in Cleveland, Ohio for 15 years. All during 1972 petitioner [2] paid the usual and necessary expenses of maintaining this house for himself, his wife, and his three children.Petitioner paid the real estate mortgage and taxes on this house and paid Ohio income taxes on all his 1972 earnings. Petitioner was a licensed driver in the state of Ohio where his automobile was also registered. He has been a resident of Cleveland all his life and was a member of a Cleveland chapter of the Polish Veterans Legion. During 1972 he served as treasurer of the men's club of a church to which he belonged in Cleveland. Petitioner and his wife maintained a savings account at a Cleveland bank during 1972 and he was a member of a credit union in that city. *18 Petitioner is an electrician by trade, and a member of Local 39 of the International Brotherhood of Electrical Workers (hereinafter IBEW) which is located in Cleveland, Ohio. Electricians such as petitioner generally obtain employment through their union local, and when employment cannot be found through their local, they are referred to other locals of the IBEW. Petitioner attempted to find employment in July, 1971 through Local 39, but was unsuccessful due to the unusually high unemployment rate among the construction trades in the Cleveland area. He then sought employment through other IBEW locals in the state of Ohio but without success. He accepted employment in July of 1971 as an electrician on the construction of a nuclear power plant in Bridgeman, Michigan, approximately 400 miles from Cleveland. This employment was obtained through IBEW Local 153, located in South Bend, Indiana. While working at the Bridgeman jobsite he continued to pay dues to Local 39 and in addition paid approximately $4 per month to Local 153 for the working privilege. Petitioner originally intended to work at this jobsite for only a short period until he could find employment nearer Cleveland. *19 Normally he would have found such employment within 3 to 6 months, but because of the depressed condition of the building trades during this period he was unable to find other steady employment until April 1973, despite weekly visits to other locals of the IBEW in Ohio. Petitioner worked at the Bridgeman jobsite from July to December 28, 1971 when he contracted pneumonia. He spent 2 weeks convalescing and, after spending another 2 weeks unsuccessfully seeking employment closer to Cleveland both through IBEW locals and with two automobile plants, he returned to the Bridgeman jobsite. Petitioner terminated employment there in April 1972 to search for employment closer to Cleveland, but after spending 2 weeks of searching without success he returned to the Bridgeman jobsite. From June to July 1972 he was laid off from his employment on the Bridgeman jobsite for approximately 6 weeks and continued to search for work closer to Cleveland. In July, 1972, petitioner and his brother-in-law entered into a contract for the purchase of a bar in the Cleveland area. They put down a $1,000 deposit and petitioner made a $5,000 loan application with the Holy Trinity Credit Union in Cleveland. *20 Petitioner intended at this time to terminate employment as an electrician altogether to manage the bar. Although the credit union approved the loan application, the business deal fell through in September, 1972 due to problems with the bar's lease. Petitioner returned to the Bridgeman jobsite in July, 1972 where he continued to work until November, 1972 at which time his wife's illness caused him to quit working there and return to Cleveland. Petitioner next worked for Bay-West Electric Co. in Cleveland for approximately 4 weeks until the job was completed and he was laid off. He returned to the Bridgeman jobsite where he continued to work from December, 1972 until April, 1973 when he terminated employment there to accept employment in the Cleveland area. Construction had not been completed at the Bridgeman jobsite when he left and work was still available for him there. During the period in 1972 when petitioner was employed at the Bridgeman jobsite he generally worked 5 days a week, returning to Cleveland on the weekends to be with his family. He was employed on the Bridgeman jobsite originally by the Rowen and Blair Electric Company and later by the L. K. Comstock Company, *21 Inc. which took over the construction project from Rowen and Blair. His income during 1972 was as follows: Employer
Income
L. K. Comstock Co., In.
$6,986.40
Rowen & Blair Electric Co.
5,924.24
Bay-West Electric Co.
1,107.75
On their 1972 Federal income tax return petitioners claimed the following deductions as employee business expenses: Meals & Lodging
$1,629.06
Automobile Expenses
3,691.25
Petitioner expended the entire claimed amount of $1,629.06 for meals and lodging. The automobile expenses were calculated by multiplying the round trip mileage between Bridgeman and Cleveland, 800 miles, by the number of round trips made by petitioner, 43, and applying to this mileage the formula respondent set forth in Rev. Proc. 70-25, 1970-2 C.B. 506, then adding to that amount, tolls and parking fees.
ULTIMATE FINDINGS OF FACT 1. Petitioner's employment in Bridgeman, Michigan was temporary in 1972. 2. Petitioner's "home" during 1972 for purposes of section 162(a)(2) was Cleveland, Ohio. OPINION Section 162(a)(2) allows a deduction for "traveling expenses (including amounts expended for meals and lodging * * *) while away *22 from home in pursuit of a trade or business." To qualify for a deduction under this provision three conditions must be satisfied: (1) the expense must be reasonable and necessary; (2) the expense must be incurred "while away from home"; and (3) the expense must be incurred in pursuit of business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946), rehearing denied 326 U.S. 812 (1946). Respondent does not dispute that the amounts deducted by petitioners were reasonable and necessary, nor does respondent argue that the expenses were not incurred "in pursuit of business." Respondent does argue, however, that the expenses are not deductible because they were not incurred while petitioner was "away from home," as the word "home" is used in section 162(a)(2). Normally the word "home" as used in that provision means the taxpayer's principal place of employment. Markey v. Commissioner, 490 F. 2d 1249, 1253 (6th Cir. 1974), revg. a Memorandum Opinion of this Court; Bochner v. Commissioner, 67 T.C. 824, 827 (1977); Michaels v. Commissioner, 53 T.C. 269, 273 (1969); McKenzie v. United States, an unreported *23 case ( E.D. Tenn. 1976, 38 AFTR 2d 76-5918, 76-2 USTC par. 9696). However, we have recognized an exception to this rule when the taxpayer's employment in an area away from his residence and usual place of employment is temporary rather than permanent or indefinite in duration. Peurifoy v. Commissioner, 358 U.S. 59 (1958). As we explained in Tucker v. Commissioner, 55 T.C. 783, 786 (1971): The purpose of allowing the deduction of living expenses while a taxpayer is "away from home" is "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Ronald D. Kroll, 49 T.C. 557, 562 (1968). In furtherance of this purpose, when a taxpayer with a principal place of employment goes elsewhere to take work which is merely temporary, he may deduct the living expenses incurred at the temporary post of duty, because it would not be reasonable to expect him to move his residence under such circumstances. Emil J. Michaels, 53 T.C. 269 (1969); Ronald D. Kroll, supra. *24 * * * The question whether employment is temporary rather than indefinite is essentially "a narrow question of fact." Peurifoy v. Commissioner, supra, at 60; Ham v. United States, 408 F. 2d 671, 672 (6th Cir. 1969); Whitman v. United States, 248 F. Supp. 845, 849 (W.D. La. 1965). "No single element is determinative of the ultimate factual issue of temporariness, and there are no rules of thumb, durational or otherwise." Norwood v. Commissioner, 66 T.C. 467, 470 (1976). The most helpful and most frequently applied guideline is again found in Tucker: [The] deductibility of traveling expenses and duplicate living expenses depends upon the ultimate question of whether the taxpayer, under all the circumstances, could reasonably have been expected to move his residence to the vicinity of his employment. [Id. at 786.] Accord Markey v. Commissioner, supra, at 1253; Kroll v. Commissioner, 49 T.C. 557, 562 (1968). After considering all the facts and circumstances, we conclude that petitioner's employment in Bridgeman, Michigan was temporary and his "home" for purposes *25 of section 162(a)(2) remained Cleveland, Ohio.Several factors, no one of them in itself determinative, support our conclusion. One such factor is the nature of petitioner's employment as an electrician. He had no steady employer but rather was employed through a union hiring hall as the need for electricians arose. Further, his employment was subject to periodic interruptions as evidenced by his layoffs from the Bridgeman jobsite in June 1972 and from the Cleveland job in December 1972. Another factor is the circumstances surrounding his acceptance of employment at the Bridgeman jobsite. He accepted employment there only because of the lack of alternative positions elsewhere. Petitioner had no intention of working outside the Cleveland area except on a temporary basis, and was prepared to accept employment outside his normal occupational pursuit if necessary to limit his absence from Cleveland to a temporary period. His extraordinary efforts to locate employment nearer to Cleveland evidence his sustained belief that the Bridgeman job was to be only temporary. We do not believe he would have taken such measures without some reasonable grounds for belief that alternative employment *26 was foreseeable and, indeed, there were reasonable grounds for such belief. Normally petitioner would have been assigned employment near Cleveland within 3 to 6 months by his union local if not for the serious economic problems that persisted during that period in the construction industry in Cleveland. But even despite this unexpected persistence of economic problems, petitioner was able to finally secure employment from the Bay-West Electric Company in Cleveland by November 1972. Although he was laid off by them in December he eventually returned to their employment in April 1973. Furthermore, petitioner also contemplated leaving the electrical field entirely during 1972 and entering a new business. He took substantial steps to do so (including making a down payment and applying for a loan) but his efforts were frustrated by lease problems with the bar he and his brother-in-law attempted to purchase. Thus while petitioner was employed at Bridgeman for extended but sporadic periods from the last half of 1971 until the first quarter of 1973, he returned to Cleveland for extended periods of up to six weeks on four separate occasions, always looking diligently for work, working *27 for an extended period of time on one occasion, and attempting to go into business on another occasion. These events may be viewed as separate employment segments, sometimes terminated by petitioner with no expectation of returning to Bridgeman, each segment being in itself temporary. But even viewing the period in its entirety, on the basis of all of the facts and circumstances in the record, we hold the employment in 1972 was temporary.
We also believe that it is not inappropriate to allude to petitioner's fiscal ties to Cleveland. His home, upon which he paid taxes, was located there and he had established credit and did his banking there. He normally found employment in or near Cleveland through union locals also located in or near Cleveland. He earned over $1,100 there in 1972 and attempted to begin a new business in that city during that year. Finally, petitioner had strong social and familial ties to Cleveland. He had lived there all his life and his wife and children continued to live there all during 1972. He was a member of several civic and religious groups and maintained those ties despite his employment in Bridgeman. Petitioner incurred the type of duplicative *28 living expenses caused by the necessity of maintaining a permanent home in one area while temporarily working and living at another area which section 162(a)(2) was designed to ameliorate. See Brandl v. Commissioner,513 F. 2d 697 (6th Cir. 1975), affg. a Memorandum Opinion of this Court; Tucker v. Commissioner,55 T.C. 783, 786 (1971); Kroll v. Commissioner,supra. Because of the strong economic, social, and familial ties to the Cleveland area and the nature of the temporary assignment taken it would not have been reasonable for petitioner to relocate himself and his family in Michigan. [3] Therefore, on the basis of the entire record, we conclude that petitioner's home during 1972 for purposes of section 162(a)(2) was Cleveland, Ohio. Petitioner's employment on the Bridgeman jobsite during that year was only temporary and therefore he is entitled to a deduction for the traveling expenses (including meals and lodging) incurred thereby. [4]
*29 Decision will be entered for the petitioners. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year involved, unless otherwise indicated.↩
2. Since Mary J. Saunders is a party to this action solely by reason of filing a joint return with her husband, William R. Saunders will be referred to as petitioner.↩
3. The facts present herein involving a taxpayer with strong economic, social and familial ties in one area who accepts employment in the construction industry in another area until he can locate employment nearer to his permanent residence are closely analogous to the facts present in: Babeaux v. Commissioner,T.C. Memo. 1977-154; Patrick v. Commissioner,T.C. Memo. 1977-153, on appeal (4th Cir. Nov. 23, 1977); Waldop v. Commissioner,T.C. Memo. 1977-190. Although Memoranda cases such as these are not binding precedent ( Nico v. Commissioner,67 T.C. 647, 654↩ (1977), on appeal (2d Cir. Apr. 6, 1977)), this Court does seek to treat those similarly situated alike. The reasoning of those cases argues strongly in favor of petitioner's position. 4. There appears to be a minor discrepancy in petitioner's testimony as to the amount of time he actually worked at the Bridgeman jobsite. According to his testimony his employment was interrupted for a total of approximately 15 to 16 weeks during January, April, June, July, November, and December of 1972. However, petitioner calculated his traveling expenses on the assumption that he spent 43 weeks working there during 1972 and he also testified that he indeed spent this much time there during 1972. In any event, we do not consider this critical to our determination of whether petitioner's employment was temporary or indefinite. Further, since respondent has not requested an adjustment in the amount of deduction allowable, and since the parties have stipulated both that the amount claimed for meals and lodging was actually expended by petitioner and that petitioner made 43 trips between Cleveland and Bridgeman during 1972, we have not ordered an adjustment to be made in the amounts of deductions claimed.↩