**UNITED STATES of America, Appellant,**

v.

**Robert C. MATHEWS and Grace E. Mathews, Appellees.**

**No. 18802.**

United States Court of Appeals Ninth Circuit.

May 18, 1964.

Rehearing Denied June 19, 1964.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Michael K. Cavanaugh, and Timothy Dyk, Attys., Dept. of Justice, Washington, D. C., Sylvan A. Jeppesen, U. S. Atty., Boise, Idaho, for appellant.

Myron E. Anderson, Boise, Idaho, for appellees.

Before ORR, JERTBERG and BROWNING, Circuit Judges.

ORR, Circuit Judge:

The question presented on this appeal is whether appellee was "away from home" within the meaning of § 162(a)(2), Internal Revenue Code of 1954, while he was living with his family in a trailer house at his principal place of employment during the tax years 1957 and 1958. The trial court decided that he was, and allowed a deduction of traveling expenses. We reach an opposite conclusion.

The statutes involved read:

"§ 62. Adjusted gross income defined

"For purposes of this subtitle, the term 'adjusted gross income' means, in the case of an individual, gross income minus the following deductions:

\* \* \* \* \* \*

"(2) Trade and business deduction of employees.—

\* \* \* \* \* \*

"(B) Expenses for travel away from home.—

"The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee."

"§ 162. Trade or business expenses

"(a) In general.—

"There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\* \* \* \* \* \*

"(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business \* \* \*"

"§ 262. Personal, living, and family expenses

"Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses."

It is the rule that each case must be determined on its own facts,[1] so we look at the record. Taxpayer is a journeyman electrician and is a member of Local No. 291, International Brotherhood of Electrical Workers, with headquarters in Boise, Idaho. This union furnishes electricians for contractors working in fourteen counties of Southern Idaho and Southeastern Oregon under contracts negotiated with said contractors.

Taxpayer and his family resided in Nampa, Idaho, nineteen miles west of Boise, Idaho, until June, 1951, when they moved to Boise. From 1951 until January 1956, taxpayer worked for various Boise electrical contractors to which he had been assigned by the union. On the termination of each job he went to the union for reassignment and in February, 1956, he was assigned to a job with Morrison-Knudsen Co. (referred to as M-K), the prime contractor on the Brownlee Dam located on the Snake River, about 136 miles northwest of Boise.

At the time taxpayer entered into said employment there was no suitable place at the damsite for his family to reside. His family therefore moved into the home of Mrs. Mathews' parents in Nampa, Idaho. Taxpayer moved into the company barracks at the Brownlee Dam site, spending weekends with his family in Nampa.

After residing in the barracks for about a month taxpayer moved a trailer house, which he owned, to Richland, Oregon, situate about twenty-two miles from his place of employment. His family resided with him there. In April, 1956, M-K completed a trailer park at Brownlee and taxpayer moved his trailer and family there.

M-K's contract with the union expired and taxpayer's employment terminated on February 12, 1957. Taxpayer was then assigned by the union to a job in Denver, Colorado, where he worked until March 12, 1957.[2] The union then called him back to Boise and again assigned him to work at the Brownlee Dam, this time for Gem State Electric Co., a subcontractor on the dam. His job with Gem State lasted until March 8, 1958. Gem State's contract with M-K ended at that time, and taxpayer was assigned to Kehne-Crabtree Electric Co., another sub-contractor at the dam. He was in Kehne-Crabtree's employ at Brownlee until the completion of the dam, except for

---

1. See Peurifoy v. Commissioner, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30 (1958).

2. The government concedes that taxpayer's traveling expenses while working in Denver are deductible.

a period of three weeks in June, 1959, when Kehne-Crabtree sent him to Pierre, South Dakota.

During the period that taxpayer and his family resided in his trailer house at the dam site they usually returned to Nampa to spend weekends at the home of Mrs. Mathews' parents. Taxpayer was sometimes required to work on weekends, and when he did his wife often went to Nampa by herself, staying for two, three, or four days before returning to Brownlee. Taxpayer's children attended school at the Brownlee site.

It is conceded that the expenses incurred by taxpayer were reasonable and necessary and that there was a direct connection between the expenditures and the carrying on of the trade or business of the taxpayer or his employer. But we think that taxpayer's home was not, as he contends, in Boise or Nampa, but rather at his trailer house at the Brownlee Dam site, and that therefore these expenditures were not incurred by taxpayer while he was "away from home".

In the case of James v. United States, 308 F.2d 204 (9th Cir. 1962) this court has, in a comprehensive manner, outlined the situation which must exist in order to qualify a taxpayer for the benefits of the deduction. As James states, the deduction was provided by Congress to offset the increased burden on taxpayers whose business requires them to travel. Since the increased costs incurred by those who travel arise largely from the burden of maintaining a home and paying living expenses at the place of employment, the deduction is limited to travel "away from home". As James explains it, the burden exists

"only when the taxpayer has a 'home,' the maintenance of which involves substantial continuing ex-

penses which will be duplicated by the expenditures which the taxpayer must make when required to travel elsewhere for business purposes." 308 F.2d at 207.

Taxpayer here incurred the normal expenses of maintaining a home at the Brownlee site, where he owned his trailer house, rented a parking space for it, and incurred utilities expenses. These expenses were not duplicated in Nampa, where taxpayer paid no rent and had none of the expenses of home ownership. Taxpayer testified that, on those occasions when he visited his in-laws in Nampa, he purchased "a lot of the stuff, furniture, T.V. set and we buy groceries." But such an arrangement does not involve the "substantial continuing expenses" as explained in James. The mere fact that taxpayer and his family found it pleasant to visit with the "folks" on week-ends does not qualify him for the deduction. Neither did a "home" for taxpayer exist in Boise. The only contact which he maintained there was through the union, which gave him new job assignments when he was terminated by an employer.

Thus taxpayer did not maintain a "home" in either Boise or Nampa during the years in question, and hence was not "away from home" as contemplated by section 162 while he lived with his family in his trailer at the Brownlee site. During that time he had no home at any place other than Brownlee. It is therefore immaterial whether his employment there was "temporary" or "substantially short" on the one hand, or "indefinite" or "substantially long" on the other.[3] Such distinctions are relevant only when the taxpayer maintains a home, and is away from it.

Reversed.

---

3. See Wright v. Hartsell, 305 F.2d 221 (9th Cir. 1962); Harvey v. Commissioner, 283 F.2d 491 (9th Cir. 1960); Commissioner v. Peurifoy, 254 F.2d 483 (4th Cir. 1957), aff'd 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30 (1958).