Harlan H. Dufer v. Commissioner.
Dufer v. Commissioner
Docket No. 3187-64.
United States Tax Court
T.C. Memo 1966-205; 1966 Tax Ct. Memo LEXIS 79; 25 T.C.M. (CCH) 1051; T.C.M. (RIA) 66205; September 22, 1966
*79 Petitioner was employed in April 1958 by a Chicago-based architectural firm and assigned to work in Washington, D.C. Petitioner remained at his assignment in Washington until October 1961. Held: Petitioner could reasonably foresee by the beginning of the taxable year 1960 that his assignment in Washington would probably last for a long period of time. His assignment, examined at the beginning of 1960, was of indefinite duration and not temporary in nature. Accordingly, petitioner, while in Washington, was not "away from home" within the meaning of sec. 162(a)(2), I.R.C., 1954. George W. Lyon, 140 South Dearborn St., Chicago, Ill., for the petitioner. *80 Sheldon S. Rosenfeld, for the respondent. SIMPSON
Memorandum Findings of Fact and Opinion SIMPSON, Judge: Respondent determined a deficiency in petitioner's income tax of $1,035.60 for the taxable year 1960. The only issue for decision is whether certain allowances received by petitioner in 1960 from his employer as reimbursement for expenses incurred while allegedly "away from home" are includable in his gross income. Findings of Fact Some of the facts were stipulated, and those facts are so found. Petitioner, Harlan H. Dufer, is an individual presently residing in Park Ridge, Illinois. Petitioner filed his Federal income tax return for the taxable year 1960 with the district director of internal revenue at Chicago, Illinois. In April of 1958, petitioner applied for a job with Johnson & Johnson, Engineers-Architects, Inc., Chicago, Illionis, as an architect. After initial interviews with officials of Johnson & Johnson, petitioner was hired by the firm. Petitioner sought employment with Johnson & Johnson because he was dissatisfied with his advancement with his former employer, and Johnson & Johnson presented an opportunity for a better future. At the time *81 he was hired, petitioner understood that he would be sent to Washington, D.C., for a period of about 2 months, but that his stay in Washington might be extended. Petitioner understood that at the end of the approximately 2-month period, he might also be transferred to work with the firm in Chicago or California. Johnson & Johnson's activities in Washington involved work for the United States Post Office Department. The firm did not have a Washington office but used space provided by the Post Office Department. During the period March 10, 1958, through June 30, 1964, Johnson & Johnson rendered engineering services to the Post Office Department under a series of short-term contracts. At the time petitioner was assigned to Washington, the contract then in force had approximately 2 months to run before its expiration. The official who interviewed petitioner for Johnson & Johnson believed at that time that the firm's contracts would be renewed and that because of the scope of the project in Washington, the people hired by Johnson & Johnson for work in Washington would remain there longer than the term of the contract then in effect. The employees of Johnson & Johnson in Washington were *82 generally informed when a new contract was entered into although no formal announcement of the contracts was made. On April 26, 1958, petitioner traveled to Washington from Chicago. He began his work on April 28, 1958, and remained with Johnson & Johnson in Washington until October 31, 1961. When petitioner was hired, he was informed that he would be given a subsistence allowance while he was in Washington. During the period January 1, 1960, through June 30, 1960, petitioner received from Johnson & Johnson a per diem of $12.00; during the period July 1, 1960, through December 31, 1960, he received a per diem of $8.00. Petitioner, during 1960, also received reimbursement for one weekend trip to Park Ridge, Illinois. The per diem and reimbursement totaled $3,215.28 for the year 1960. This amount was not included by petitioner as income on his Federal income tax return for that year, although petitioner did state on his return that he had received an expense allowance or reimbursement from his employer for which he had submitted an itemized accounting. When petitioner first arrived in Washington, he stayed for a few days in a motel and then made arrangements to stay in Alexandria, *83 Virginia, on a month-to-month basis. He later had another address in Washington, D.C. During the period April 1958 through June 1961, petitioner did not at any time request a transfer to Chicago from Washington, but during July or August of 1961, he did request such a transfer, since he felt that his stay in Washington had drawn out to a lengthy period of time. On November 1, 1961, petitioner began work with Johnson & Johnson in Chicago. Petitioner's departure from Washington was at his own initiative; he could have continued working in Washington after October of 1961, if he had so desired. Opinion This case depends upon the proper interpretation of the words "away from home" in section 162(a)(2) of the Internal Revenue Code of 1954, [1] which provided for the taxable year 1960: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * *
(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; *84 * * * Petitioner's position is that, prior to going to work for Johnson & Johnson, he resided and maintained a home in Park Ridge, Illinois, part of the Chicago area. Petitioner asserts that Johnson & Johnson assigned him to Washington, D.C., for a temporary stay. This stay, petitioner argues, was extended a number of times; but each new stay was only temporary, and at no time did petitioner change his "home" from Park Ridge to Washington. Accordingly, petitioner maintains that during 1960 he incurred expenses while on a temporary assignment for his employer away from home, and the reimbursement for these expenses should not be includable in gross income. Respondent contends that petitioner's assignment to Washington was not temporary but was indefinite and indeterminate because its termination within a reasonably short period of time was not foreseeable. Respondent also contends that even if petitioner's assignment to Washington was temporary at its inception, by the beginning of 1960 it had ripened into employment of a substantial, indefinite, or indeterminate duration. Respondent *85 further argues that there is no evidence that petitioner maintained a home in the Chicago area during the years he was in Washington, and consequently, petitioner incurred no "double burden" of expenses. The term "home", as used in section 162(a)(2), has been interpreted to mean the taxpayer's principal place of employment and not where his personal residence is located, if such residence is located in a different place from his principal place of employment. Floyd Garlock, 34 T.C. 611 (1960); James M. Eaves, 33 T.C. 938 (1960); Ray A. Smith, 33 T.C. 1059 (1960). But if the taxpayer has a principal place of employment in one location and accepts temporary work at another location, his presence at the second location is regarded as "away from home" Floyd Garlock, supra; Harry F. Schurer, 3 T.C. 544 (1944), acq. 1944 C.B. 24. However, if the taxpayer, having a principal place of employment in one location, accepts work at another location that is not temporary but is of indefinite or substantial duration, his presence at the second location is not regarded as "away from home". Commissioner v. Peurifoy, 254 F. 2d 483 *86 (C.A. 4, 1957), revg. 27 T.C. 149 (1956), affd. per curiam 358 U.S. 59 (1958). Further, if the employment while away from home, even if temporary at its inception, becomes substantial, indefinite, or indeterminate in duration, the situs of such employment for purposes of the statute becomes the taxpayer's home. Floyd Garlock, supra; Arnold P. Bark, 6 T.C. 851 (1946). The important distinction is thus between employment that is temporary and employment that is substantial, indefinite, or indeterminate in duration. Commissioner v. Puerifoy, supra.Whether employment is temporary or substantial, indefinite, or indeterminate is a purely factual question. Commissioner v. Puerifoy, supra; Leo M. Verner, 39 T.C. 749 (1963), acq. 1963-2 C.B. 5 Consideration is given to the actual duration of the employment, Floyd Garlock, supra, and to whether its termination within a short period could be foreseen. Beatrice H. Albert, 13 T.C. 129 (1949). Petitioner relies upon Harvey v. Commissioner, 283 F. 2d 491 (C.A. 9, 1960), revg. 32 T.C. 1368 (1959). The Ninth Circuit *87 in that case rejected a mechanical application of the temporary-indefinite distinction, stating that a post of indefinite employment is not always the "home" post. The court formulated the rule that "An employee might be said to change his tax home if there is a reasonable probability known to him that he may be employed for a long period of time at his new station. What constitutes a 'long period of time' varies with circumstances surrounding each case." In the present case we would reach the same result regardless of whether we followed the rule set forth in Harvey or the temporary-indefinite distinction as applied in other cases. The only year we have before us is 1960, and since the nature of the duration of employment may change from temporary to indefinite, we have only to determine the nature of petitioner's assignment in Washington for the year 1960. If we look, then, at petitioner's assignment in Washington at the beginning of the taxable year 1960, petitioner had been in Washington for more than 20 months. Petitioner has been given no indication in that time that he might soon be returning to Chicago. And it was not until the latter half of 1961 that petitioner attempted *88 to find out if he could return to Chicago. Petitioner then had to take the initiative to return, or he might have remained in Washington even longer. In view of a stay in Washington in excess of 20 months with no definite prospect of returning to the Chicago area, we must find that, at the beginning of the taxable year 1960, petitioner's assignment in Washington was for a substantial, indefinite, and indeterminable period. For the same reasons, we must also find that, at the beginning of 1960, petitioner knew there was a reasonable probability that he might be employed in Washington for a long period of time. As the court said in Harvey, what constitutes "a long period of time" may vary. In the circumstances of this case, it would be entirely reasonable to have expected petitioner, by the beginning of 1960, to have moved his personal residence to Washington. There were only two ways in which petitioner could have left Washington still in the employ of Johnson & Johnson. Johnson & Johnson could have voluntarily decided to transfer him to another job in Chicago or elsewhere, or their contract with the Post Office Department could have expired without renewal, forcing a transfer out *89 of Washington. As we have stated, there had been no word of a transfer. After 20 months, there was little likelihood of a transfer in the next few months. And the contract between Johnson & Johnson and the Post Office Department in force at the beginning of 1960 would not expire until June 30, 1960. After petitioner had seen several short-term contracts renewed and after petitioner had become familiar with the scope of the project, he should have expected that the contract would probably be renewed. In addition, there is no indication in the record that petitioner was married or had a family or other personal ties in Chicago. It is reasonable to expect a single individual to move his personal residence with more ease than could a married person or one with family ties. We also think it is significant that petitioner introduced into the record no evidence of his mainternance of a home in the Chicago area. Several times in his testimony petitioner referred to his home in Chicago or Park Ridge, but we do not know if petitioner made expenditures in that area while he was also maintaining a residence in Washington. Hence, there is no indication that petitioner was burdened with the expense *90 of maintaining two homes - the hardship that section 162(a)(2) was designed to ameliorate. In United States v. Mathews, 332 F. 2d 91 (C.A. 9, 1964), the fact that the taxpayer had not maintained a "home" at his socalled permanent place of employment was in itself sufficient for the Ninth Circuit to deny a deduction for expenses allegedly incurred away from home. Accordingly, the $3,215.28 received by petitioner from his employer in 1960 should have been included in his gross income for that year, and petitioner is not entitled to deduct his expenses for travel, meals, and lodging since such expenses were not incurred "while away from home". Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩