Edward J. Letscher and Constance E. Letscher v. Commissioner.
Letscher v. Commissioner
Docket No. 2569-67.
United States Tax Court
T.C. Memo 1969-224; 1969 Tax Ct. Memo LEXIS 70; 28 T.C.M. (CCH) 1180; T.C.M. (RIA) 69224; October 22, 1969, Filed Edward J. Letscher, pro se, 113 Glover Ave., Yonkers, N. Y. Stanley J. Goldberg, for the respondent. STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: The Commissioner determined a deficiency in petitioners' Federal income tax for the year 1964 in the amount of $1,938.56. In addition to *71 the tax, respondent determined an addition to tax of $385.25 under section 6651(a) of the Internal Revenue Code of 1954. [1] Due to concessions of the parties by stipulation and at trial, the sole issues before the Court are whether certain expenses for food, lodging, laundry and transportation are deductible under section 162(a) (2) and whether certain amounts received as per diem reimbursement are to be included in gross income. Findings of Fact The parties have stipulated some of the facts; accordingly, their stipulation and the attached exhibits are incorporated herein by this reference. Edward J. Letscher and Constance E. Letscher are husband and wife who were temporary residents of Vestal, New York, at the time they filed their petition herein. They filed their joint Federal income tax return for 1964 with the district director of internal revenue, Manhattan district, New York. The husband will sometimes be hereinafter referred to as petitioner. Beginning in 1945 the petitioner was a resident at 113 Grover Avenue in Yonkers, New York. He lived there *72 throughout his school and college years. Upon graduation petitioner accepted employment as an electrical engineer with Airborne Instrument Laboratories and commuted from Yonkers the 60 miles, round trip distance, when the company was located in Mineola and the 100 miles, round trip distance, to Melville, Long Island, after the company moved there. In April of 1960 the petitioner changed employment and commuted, a round trip distance of approximately 110 miles to Fairchild Stratos Corporation in Wyandanch, Long Island. During this period substantially all of the petitioner's social contacts were at Yonkers. The petitioner was married in September of 1961 to a young lady from Long Island. Since 1957 the petitioner had practiced his profession exclusively for defense contractors. During 1961 the petitioner felt that there was a recession in the defense industry on Long Island. Therefore just prior to his aforenoted marriage the petitioner decided to reside in Yonkers, because he felt the area would be a central location from which to obtain employment in the defense industry. To this end petitioner orally agreed to purchase the house at 113 Grover Avenue, Yonkers, for $12,000. By *73 check dated September 18, 1961, petitioner paid $1,000 to his mother. Petitioner made no subsequent payments on the purchase price and title to the house has never been in his name. [2]
From July 1961 until the beginning of July 1963 petitioner resided at 14 Lincoln Street in Babylon, Long Island, which he rented unfurnished. The petitioner expected to live at this address for a period of twelve months while his mother made arrangements to vacate the house in Yonkers. In April of 1963 petitioner was dismissed by Fairchild and was unemployed for eight weeks. During this time he sought other employment in Long Island, New Jersey, and Westchester County as well as Florida. Subsequently he secured employment with General Precision Instruments at Little Falls, New Jersey. Petitioner worked at General Precision for approximately one 1181 month, when the contract he had been working on was cancelled. While so employed petitioner commuted from Yonkers to New Jersey and returned to his wife in Long Island on weekends. Fearing a long period of unemployment petitioner *74 accepted employment with Comprehensive Designers of Philadelphia and was assigned to McDonnell Corporation in St. Louis, Missouri. Petitioner's services were furnished to McDonnell pursuant to a contract between Comprehensive Designers and McDonnell. Petitioner had an oral agreement with Comprehensive Designers plus a letter setting forth his wages, holiday pay, and per diem allowance. He was told that his employment would last approximately six months. His transportation to St. Louis from New York City was paid by Comprehensive Designers. He began work in St. Louis on or about July 4, 1963. At this time the petitioner's wife resided with his mother in Yonkers for a short period. However, they were unhappy with this arrangement and on August 1, 1963, petitioner signed a lease for an apartment in Bridgeton, St. Louis County, Missouri. The lease was to commence on August 3, 1963, and run for a term of one year. On the printed form was typewritten: (2) The above lease is subject to said lessee not being transferred from the metropolitan area of St. Louis by present employer (McDonnell Aircraft Corp.) In furtherance of the above clause he was given the right to cancel the lease *75 upon thirty days' notice. While in St. Louis petitioner leased furniture leaving his own furniture at Yonkers. The McDonnell job lasted approximately four months when Comprehensive Designers notified him that his services were no longer needed. Petitioner cancelled his lease in St. Louis in the last week of September, 1963. In October of 1963 petitioner was employed by Hamilton Research Associates of New Hartford, New York, and assigned to Stromberg-Carlson Corporation in Rochester, New York. Petitioner was told by Hamilton Research Associates that the job would last for approximately six months. Hamilton Research Associates paid petitioner's expenses from New York City to Rochester. After residing in a motel for one month, on November 15, 1963 petitioner signed a lease with the Rochwin Realty Company for an apartment at 483 Winton Road, Rochester, for a term commencing on December 1, 1963 and terminating December 1, 1964. At the bottom of the printed form was handwritten: Nov-15, 1963 In the event that Mr. Letcher is transfered out of Monroe County - this lease shall become null & void /s/ Richard J. Niger Sec. Treas- On this occasion petitioner moved his furniture to Rochester. *76 He, his wife and child resided in the apartment while petitioner worked for Stromberg-Carlson. His assignment with Stromberg-Carlson ended on May 19, 1964. Petitioner was paid during this period by Hamilton Research Associates. About one week after his employment with Stromberg-Carlson was terminated, petitioner personally and by confirming letter cancelled his lease with Rochwin Realty Company. He made arrangements to have his furniture moved out and he and his family returned to New York. They spent approximately two weeks at the house in Yonkers and one week with petitioner's wife's parents on Long Island. During this time, towards the end of May, 1964, petitioner had an interview at Consultants & Designers, Inc. (located in New York City), with the representatives of Eastman Kodak and was accepted by them for employment in Rochester. Petitioner was actually employed by Consultants & Designers pursuant to a contract they had with Eastman Kodak to furnish personnel. Petitioner was told that he would be employed for approximately six months. During his period of employment petitioner was paid by Consultants & Designers. Petitioner began work at Eastman Kodak on June 18, 1964, and *77 his assignment was ended in the beginning of October 1964. Shortly before returning to Rochester (at the end of May) the petitioner telephoned the realtor there and renewed his cancelled lease. His furniture had remained at the Rochester apartment during the petitioner's absence. Petitioner returned to Rochester because there were no other jobs with comparable salaries nor were there jobs of permanent nature to be found elsewhere. When petitioner's assignment with Eastman Kodak ended, he was again employed by Hamilton Research Associates, and was assigned to the General Electric Company at Utica, New York, where he began working on October 6, 1964. Petitioner on this occasion made no attempt to seek employment in New York City. 1182 He worked in Utica for the balance of 1964. While in Utica petitioner stayed with a friend or at the YMCA. His wife continued to live at the apartment in Rochester, since housing in keeping with his financial means was scarce in Utica. On weekends and on days off during the week petitioner would travel to Rochester. For several weeks in succession petitioner's wife came to Utica. On these occasions they would stay at motels. On their joint *78 Federal income tax return for 1964 petitioner and his wife deducted the excess of travel expenses over amounts received as a per diem allowance for reimbursement. [3] In his statutory notice the respondent disallowed this deduction and added the amount of reimbursement to the petitioner's gross income, [4] stating: (c) When your job at a new location is expected to last for an indefinite period and you cannot determine approximately when it will end, that location becomes your "tax home". The cost of non-business travel, meals and lodging while at your tax home is not a deductible expense. Reimbursement you received for such expenses has been added to income. Opinion Section 162(a) (2) allows a deduction for "traveling expenses * * * while away from home in the pursuit of a trade or business." The Supreme Court in Commissioner v. Flowers, 326 U.S. 465, 470 (1946), prescribed *79 the three conditions necessary to qualify a traveling expense as a deduction within the purview of this statute as follows: (1) The expense must be a reasonable and necessary traveling expense. (2) The expense must be incurred "while away from home." (3) The expense must be incurred in pursuit of business. This Court "has engrafted an exception which allows a deduction * * * when the taxpayer's employment is 'temporary' as contrasted with 'indefinite' or 'indeterminate.'" Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958) (a per curiam opinion), affirming 254 F. 2d 483 (C.A. 4, 1957). This gloss on the Flowers rule means that: * * * an individual, who has a well established tax home, accepts temporary employment of short duration away from his tax home, it has been held that his travel and maintenance are allowable deductions * * *. While the question is not entirely free from doubt, petitioner seems to have proven that his assignments during 1964, as well as 1963, were temporary. He was told by Hamilton Research Associates and by Consultants & Designers that the jobs to which he was assigned would last approximately six months. In point of fact *80 none of the jobs so procured lasted more than this period. While we do not doubt that the petitioner thought of his employment and residence in Rochester and Utica as temporary as opposed to indefinite, "such distinctions are relevant only when the taxpayer maintains a home, and is away from it." United States v. Mathews, 332 F. 2d 91, 93 (C.A. 9, 1964). It is obvious from the testimony given as well as the surrounding facts and circumstances that the petitioner would have preferred to reside in Yonkers and that he hoped to return there. This, however, is not sufficient to carry his burden of showing a well-established tax home. The evidence of petitioner's physical presence in places other than his purported tax home makes his burden of overcoming the presumption of the correctness of the respondent's determination intolerable. During the taxable year at issue, 1964, petitioner spent only two weeks at the house in Yonkers. He maintained an apartment in Rochester during virtually the entire year. While the petitioner did not intend to make Rochester his permanent home, the fact remains that by no objective manifestation did he make Yonkers his home. "[A] taxpayer *81 has a 'home' * * * only when it appears that he has incurred substantial continuing living expenses at a permanent place of residence." James v. United States, 308 F. 2d 204, 208 (C.A. 9, 1962). The 1183 James case expresses the raison d'etre of section 23(a) (1) (A) of the 1939 Code (the predecessor of section 162(a) (2)). Congress has authorized a deduction for certain basic living expenses incurred while away from home, but only because taxpayers whose businesses require travel have increased burdens due to duplication. This duplication occurs when the taxpayer incurs living expenses due to the maintenance of a home in addition to those he incurs when traveling. James v. United States, supra, at 206-207; see also Kenneth H. Hicks, 47 T.C. 71 (1966); Henry C. Deneke, 42 T.C. 981 (1964); and Leo M. Verner, 39 T.C. 749 (1963). In the instant case the petitioner has not shown that he has incurred these duplicitous expenses. Although he made a down payment on the house in Yonkers and he contributed to the support of his mother, brother and sister, he has not shown that he contributed to the maintenance of the house *82 for his own use as a home. See Irving M. Sapson, 49 T.C. 636 (1968) in which we allowed the deduction. In addition to the petitioner's failure to prove that he has incurred duplicitous expenses he has not shown that his principal place of employment was in Yonkers. We have in the past consistently held that such a showing is a prerequisite to the establishment of the existence of a "tax home." See e. g., Ronald D. Kroll, 49 T.C. 557 (1968); and Robert A. Coerver, 36 T.C. 252 (1961), affirmed per curiam 297 F. 2d 837 (C.A. 3, 1962). On this issue, also, the petitioner's physical presence makes it most difficult to prove that his principal place of employment was in Yonkers. During the years 1963 and 1964 the petitioner was employed outside of the Yonkers area for 18 months. And during the year in question the petitioner did not work at all in the Yonkers area. Although the petitioner procured assignments through "job shops" which were technically his employers, his places of employment were at the locations to which he was assigned, not at the location of the "job shops." It was never contemplated that he would work at the "job *83 shop." The situation is analogous to the assignment of a worker to a particular job by a labor union. See United States v. Mathews, supra, which held that this was not sufficient contact to render the place of assignment a "tax home." The petitioner carried out his trade or business of being an employee at St. Louis, Rochester, and Utica. Accordingly, we hold that the expenses incurred by the petitioner are not deductible under section 162(a) (2) but are personal, living, or family expenses under section 262 and therefore nondeductible. In addition, amounts received as a per diem allowance for living expenses must be included in gross income. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954 unless otherwise stated.↩
2. The record makes clear only that petitioner is not the record owner of the house, but not who is the owner.↩
3. In taking the deduction petitioner deducted $100 too little due to a mathematical error. ↩
4. The respondent made a $223 downward adjustment of the reimbursement which was unexplained in the statutory notice but appears to be for the reason that petitioner miscalculated the amount received.↩