JAMES C. LICHTENBERGER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lichtenberger v. Commissioner
Docket No. 23342-82.
United States Tax Court
T.C. Memo 1985-370; 1985 Tax Ct. Memo LEXIS 261; 50 T.C.M. (CCH) 519; T.C.M. (RIA) 85370; July 24, 1985. *261 Petitioner, a contract engineer, worked at jobs that generally lasted from three months to one year. The jobs he had in 1978 were in Michigan, Kansas, and Minnesota. His mother lived in Cerro Gordo, Illinois. Held: Cerro Gordo was not petitioner's "home"; his 1978 expenses for food, lodging, etc., are not deductible expenses incurred while traveling "away from home". Sec. 162(a)(2), I.R.C. 1954. Robert T. Duffy and Anne M. Frayne, for the petitioner. Robert J. Kastl, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioner for 1978 in the amount of $7,480. The issue for decision is whether petitioner may deduct certain expenses under section 162(a)(2)[1] on account of his employment at places away from Cerro Gordo, Illinois. FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant *262 case, petitioner's legal residence was in Cerro Gordo, Illinois. Petitioner is a contract engineer [2] and has been employed in that profession since 1951. Petitioner's employment history since 1951 is shown in table 1. Table 1 Employer
Beginning
End
Various companies * *264 Feb. 1951
May 1954
American Machine & Foundry **
Greenwich, Conn.
Goodyear Aircraft Co.
May 1954
Feb. 1956
Akron, Ohio
Norden
Feb. 1956
June 1956
White Plains, N.Y.
Stromberg-Carlson
June 1956
Feb. 1957
Rochester, N.Y.
Baldwin-Lima-Hamilton
Feb. 1957
May 1957
Boston, Mass.
Laboratory for Electronics
May 1957
Aug. 1957
Boston, Mass.
Stromberg-Carlson ***
Aug. 1957
Dec. 1957
Redstone Arsenal
Dec. 1957
Aug. 1958
Huntsville, Ala.
General Electric Co.
Aug. 1958
July 1959
Pittsfield, Mass.
AVCO Crosley
July 1959
Nov. 1959
Evendale, Ohio
Motorola
Nov. 1959
Jan. 1960
Chicago, Ill.
Haloid-Xerox
Jan. 1960
March 1960
Rochester, N.Y.
IBM Corp.
March 1960
Dec. 1960
Endicott, N.Y.
Canadian Design Service
Dec. 1960
Feb. 1961
Toronto, Ont.
General Electric Co.
Feb. 1961
April 1961
Evendale, Ohio
Fairchild-Stratos Corp.
April 1961
June 1961
Wyandanch, N.Y.
Lehigh Design Co.
June 1961
April 1962
Pittsburgh, Penna.
Electro-Mechanical
April 1962
Oct. 1962
Research, Inc.
Sarasota, Fla.
Minneapolis Honeywell
Oct. 1962
Aug. 1964
Minneapolis, Minn.
Eastman Kodak
Aug. 1964
Dec. 1964
Rochester, N.Y.
Bell Aerosystems, Inc.
Jan. 1965
April 1965
Niagara Falls, N.Y.
RCA
April 1965
Aug. 1965
Burlington, Mass.
IBM
Aug. 1965
Nov. 1965
Rochester, Minn.
Magnavox
Nov. 1965
Jan. 1966
Urbana, Ill.
Bendix Corp.
Jan. 1966
Aug. 1966
Teterboro, N.J.
General Electric, Inc.
Aug. 1966
Jan. 1967
Johnson City, N.Y.
Hamilton, Std.
Jan. 1967
April 1967
Broad Brook, Conn.
AVCO
April 1967
June 1967
Huntsville, Ala.
Bendix
June 1967
Oct. 1967
Ann Arbor, Mich.
General Time
Jan. 1968
May 1968
Wheeling, Ill.
Hallicrafters
May 1968
Aug. 1968
Chicago, Ill.
AVCO Corp.
Aug. 1968
Jan. 1969
Cincinnati, Ohio
RCA
March 1969
Sep. 1969
Burlington, Mass.
National Cash Register
Sep. 1969
April 1970
Dayton, Ohio
Modine, Inc.
April 1970
Oct. 1970
Racine, Wisc.
Bendix
Oct. 1970
Oct. 1971
Southfield and
Ann Arbor, Mich.
Amecom Div. of LittonInd.
Oct. 1971
July 1972
College Park, Md.
Electronics Communications
July 1972
Sep. 1972
Div. of NCR
St. Petersburg, Fla.
Fairchild Industries
Sep. 1972
Nov. 1972
Germantown, Md.
Addressograph-Multigraph ***
Nov. 1972
Feb. 1973
Swanson-Erie Co.
Feb. 1973
July 1973
Erie, Penna.
Hamilton-Standard
July 1973
Sep. 1973
Windsor Locks, Conn.
American Hospital
Sep. 1973
Feb. 1974
Supply ***
Collins Radio
March 1974
June 1974
Cedar Rapids, Iowa
*
June 1974
Sep. 1975
Basler Electric Co. ****
Dec. 1975
May 1976
Highland, Ill.
Westinghouse ****
May 1976
Sep. 1976
Baltimore, Md.
American Sterilizer Corp.
Sep. 1976
Nov. 1976
Erie, Penna.
Chrysler *****
Nov. 1976
May 1977
Sterling Heights, Mich.
Harris Broadcast
May 1977
Sep. 1977
Products *****
Quincy, Ill.
Chrysler
Oct. 1977
Feb. 1978
Detroit, Mich.
Boeing
Feb. 1978
Oct. 1978
Wichita, Kan.
Honeywell
Oct. 1978
April 1979
Minneapolis, Minn.
McDonnell-Douglas
May 1979
Feb. 1980
St. Louis, Mo.
*263 Petitioner was born less than 10 miles from Cerro Gordo. Petitioner's parents left Cerro Gordo in 1946, when petitioner joined the United States Army. Petitioner's parents returned to Cerro Gordo in 1962; shortly thereafter, his father died and was buried in Cerro Gordo. Petitioner's mother continued to live in Cerro Gordo until late 1982, when she sold her house and moved to Florida. Employment as a contract engineer is not available in Cerro Gordo, and there are few prospects for such work in the general vicinity. During the period 1976 through 1979, petitioner was not employed at any location within daily commuting distance of Cerro Gordo. When petitioner worked in Highland, Illinois, or Quincy, Illinois, he often returned on weekends to his mother's house, in Cerro Gordo. In 1977, petitioner was in Cerro Gordo a total of about 60 days, about 50 of which were on weekends. In 1978, petitioner was in Cerro Gordo a total of about 10 days, all of *265 which were on weekends except for Labor Day and the next day. Petitioner found jobs through contract engineering firms. Generally, these jobs lasted from three months to one year. Petitioner used his mother's house in Cerro Gordo, and a telephone in that house, as a means for contract engineering firms to communicate with him regarding possible employment. Petitioner's mother forwarded information to him. He generally telephone her every two or three days (daily, if his job was about to end), both to receive this information and also to check on her circumstances (she was elderly and living alone). Petitioner did not pay rent to his mother. Petitioner paid her for long distance telephone calls and took care of her financial affairs. When he was in Cerro Gordo, petitioner bought groceries for his mother and took her out for meals. When he was away from Cerro Gordo, petitioner sent various foodstuffs to his mother. Petitioner may have spent as much as $700 - $800 in this manner in some years; he spent about $300 -- $400 in this manner in 1978. Petitioner filed Illinois State income tax returns since that tax was first imposed, in 1968 or 1969. On his Illinois tax returns for *266 1977, 1978, and 1979, he declared himself to be a resident of Illinois. Petitioner first registered to vote in 1970, in Cerro Gordo, after an issue was raised as to his residence; he continued to be registered through 1978. Over the years, petitioner held drivers licenses from several States. He acquired an Illinois drivers license in 1977, which he continued to hold well past 1978. In 1978, petitioner's primary checking account was in Cerro Gordo (an account he had opened in 1966 or 1967). He also had checking accounts in Minnesota and Massachusetts. In 1978, petitioner maintained an account through a Minneapolis, Minnesota, office of a stock brokerage company, and opened an individual retirement account by mail in Denver, Colorado. In 1978, petitioner bought rental real property in Minneapolis, Minnesota. In 1978, petitioner spent $20,549 which he deducted on his income tax return ($19,975 "above the line" and $574 "below the line") as travel away from home expenses, the deduction for which was disallowed by respondent. * * * Petitioner was not away from home on business in 1978, when he was away from Cerro Gordo. OPINION Petitioner maintains that, in 1978, his "home" (within *267 the ordinary meaning of that term) was in Cerro Gordo, that he was away from home on business, and that the concept of "tax home" is not relevant in the instant case. Respondent contends that petitioner had no home to be away from in 1978, since he did not incur "substantial duplicative living expenses by reason of his business travel." We agree with respondent. Personal expenses are not deductible, unless the contrary is "expressly provided" in Chapter 1 (sec. 262). [3]Section 162(a)(2)[4] *268 expressly permits a taxpayer to deduct what might otherwise be personal expenses if all the following requirements are met ( Commissioner v. Flowers,326 U.S. 465, 470 (1946)): (1) The expense is a traveling expense (this includes such items as transportation fares and food and lodging expenses incurred while traveling); (2) The expense is incurred while "away from home"; and (3) The expense is an ordinary and necessary expense incurred in pursuit of a trade or business. The parties do not appear to dispute that petitioner's expenses were paid, were "traveling expenses", and were "incurred in pursuit of business". This Court has held that as a general rule "home", as used in section 162(a)(2), means the vicinity of the taxpayer's principal place of employment and not where his or her personal residence is located. E.g., Mitchell v. Commissioner,74 T.C. 578, 581 (1980); Daly v. Commissioner,72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (CA4 1981). Petitioner relies on an exception to the general rule. Under this exception a taxpayer's personal residence may be the "tax home" if the principal *269 place of business is "temporary", rather than "indefinite". See Peurifoy v. Commissioner,358 U.S. 59, 60 (1958). It is clear from petitioner's work history (table 1, supra) that petitioner's jobs were temporary, and respondent does not contend otherwise. An obvious precondition to petitioner's being "away from home" is that he have a home to be away from. In the context of section 162(a)(2), petitioner must show that he incurred substantial living expenses at a permanent residence. This requirement is in accord with the purpose underlying section 162(a)(2), to mitigate the burden falling upon a taxpayer who, because of the exigencies of his or her trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses. E.g., James v. United States,308 F.2d 204, 207-208 (CA9 1962); [5] *270 Bochner v. Commissioner,67 T.C. 824, 828 (1977); Kroll v. Commissioner,49 T.C. 557, 562 (1968). In applying the law to the facts of the instant case, the following elements cause us to conclude that petitioner was not away from home in pursuit of business in 1978: (1) Petitioner spent a total of $300-$400 in connection with his mother's house in Cerro Gordo. It is not clear how much of this total (or, indeed, whether any part of this total) is other than the gifts or assistance one might expect petitioner to provide to his elderly mother, who was living alone. Petitioner's claimed deductions amount to roughly 60 times these expenses. This level of spending does not strike us as the sort substantial expenses "at home", or duplication of living expenses, that forms the basis for this statutory deduction. (2) Petitioner neither owned nor rented a home in Cerro Gordo, nor did he have any investments in real estate in *271 the area. (3) There was no work in Cerro Gordo for petitioner. The record made it clear that, from 1976 to 1979, there was no work close enough to Cerro Gordo to permit daily commuting. Nothing in the record indicates that any employment opportunities in petitioner's profession either existed, or were contemplated by petitioner at any relevant time, in either Cerro Gordo itself or within commuting distance of Cerro Gordo. (4) No exigencies of petitioner's trade or business required petitioner to maintain an abode in Cerro Gordo. It appears to us that the factual setting of the instant case is strikingly similar to that of Brandl v. Commissioner513 F.2d 697 (CA6 1975), affg. a Memorandum Opinion of this Court. [6] The Court of Appeals described the factual setting in Brandl (513 F.2d at 698) as follows: Ludwig Brandl, the taxpayer, is an unmarried Canadian citizen of German birth who moved to the United States in 1967. In 1969 he was employed as the technical representative for the Strong Electric Company of Toledo, Ohio. This position required him to travel throughout the United States to meet with dealers handling the Strong lighting equipment. In this capacity Brandl spent approximately *272 nine to ten months on the road during 1969. These trips were made at the direction of his employer; they usually lasted from four to six weeks; and they always terminated at the employer's office in Toledo. When in Toledo the taxpayer stayed at the house of his brother. Although he had no formal rental agreement with his brother, he did purchase groceries for the family during his stay in addition to undertaking several home improvement projects. According to Brandl, these activities were in lieu of actual rental payments. Also, the taxpayer received his mail at his brother's residence and paid Ohio state and Toledo local taxes. The Court of Appeals affirmed our holding that Brandl's brother's house was not a strong enough attachment to enable Brandl to treat Toledo as his home for purposes of section 162(a)(2). Petitioner's case appears to us to be weaker than Brandl's in that Brandl could point to his employer's office in Toledo as a strong business justification for his treating Toledo as his home. In contrast, petitioner does not have any business connection with Cerro Gordo. We conclude that Cerro Gordo was not petitioner's home in 1978, for purposes *273 of section 162(a)(2). Petitioner seeks to distinguish the instant case from Brandl on the ground that, in the latter case, "Any 'home' in Toledo during the remainder of 1969 was a matter of convenience, not conviction." Petitioner's more extensive roots and family ties in Cerro Gordo do not establish the business nature of his situation, but rather tend to establish its personal nature. The taxpayer's "conviction", although it may be of controlling significance for purposes of determining domicile (and matters that flow from such a determination), is not sufficient to establish petitioner's claim to business expense deductions. To the same effect, see, e.g., Scotten v. Commissioner,391 F.2d 274 (CA5 1968), affg. a Memorandum Opinion of this Court [7] (sister-in-law's home); United States v. Mathews,332 F.2d 91 (CA9 1964) (parents-in-law's home); Fisher v. Commissioner,230 F.2d 79 (CA7 1956), affg. 23 T.C. 218, 225 (1954) (mother-in-law's apartment); Hicks v. Commissioner,47 T.C. 71 (1966) (parents' home). Petitioner relies on Burns v. Gray,287 F.2d 698 (CA6 1961), in which the Court of Appeals held that the taxpayer's home was "the place where he has lived *274 for twenty-five years; where he bought a house and made a home for his wife, her parents, and himself, during the past sixteen years; and where he votes, pays his taxes, and resides between periods of employment away from such home." 287 F.2d at 700. Although the opinion does not provide information on expenditures, it seems to us likely that Burns established to the satisfaction of the Court of Appeals that his situation involved significant duplication of expenses of actually maintaining two abodes. In this critical respect, Burns v. Gray is distinguishable from the instant case. Similary, we distinguish Rambo v. Commissioner,69 T.C. 920 (1978), on which petitioner also relies. We note that in Rambo, which we stated was a close case (69 T.C. at 924), the taxpayer owned his own home and also owned some rental property in the general locale of his home. The instant case falls on the other side of the line that Rambo closely approached. Petitioner's reliance on Michaels v. Commissioner,53 T.C. 269 (1969), is also unavailing. In holding for the taxpayer in Michaels, we distinguished James v. United States,supra,Verner v. Commissioner,39 T.C. 749 (1963), and United States v. Mathews,supra, *275 as follows (53 T.C. at 274): Moreover, in none of them did the taxpayer continue to own or rent a dwelling in the locality which he claimed as his "home." As a result, the court in each case concluded, he had no "home" to be away from, and thus he did not incur the expense of maintaining two places of abode. However, in both Dowd [v. Commissioner,37 T.C. 399 (1961)] and the case now before us, the taxpayer continued to own a house which he rented out during his absence. In the context of this case, we find this distinction significant. The lease on the house in Seattle was for only 1 year. The petitioner left a portion of his own furniture in the house. As far as the taxpayer knew in 1964, he and his family would be returning to Seattle sometime in mid-1965. In this setting we regard retention of the house in Seattle as persuasive evidence of the taxpayer's intention to return to it in 1965. We find that he did have a "home" to which to return. Cf. Friedman v. Commissioner,37 T.C. 539, 558 [1961]. On the point that we considered to be critical in Michaels, petitioner's case falls on the James-Verner-Mathews side of the line--he does not "continue to own or rent a dwelling *276 in the locality which he claimed as his 'home'." Petitioner also asserts that he "duplicated" his Cerro Gordo expenses when he traveled away from home. At Cerro Gordo he stocked the freezer, whereas when traveling he purchased food and lodging. Petitioner has failed to show that any significant part of the $300-$400 he spent in 1978 (or the $700-$800 he may have spent in some years) constituted a duplication of expenses rather than an adult child's gifts to, or in support of, his mother. We cannot ignore the fact that his claimed deductions are perhaps 60 times the amount of his total (not merely duplicated) Cerro Gordo expenses for the year in question. Taking into account the record as a whole, we conclude (and we have found) that petitioner was not away from home on business in 1978, when he was away from Cerro Gordo. We hold for respondent. Decision will be entered for respondent.
Footnotes
1. Unless indicated otherwise, all chapter and section references are to chapters and sections of the Internal Revenue Code of 1954 as in effect for the year in issue.↩
2. See generally, Deamer v. Commissioner,752 F.2d 337 (CA8 1985), affg. T.C. Memo. 1984-63, and Myhrman v. Commissioner,T.C. Memo. 1985-333↩, regarding employment practices in this profession.
*. The record does not indicate the employer's name, ** The record does not indicate the dates of employment. *** The record does not indicate the location of employment. **** The parties stipulated to an exhibit which includes "petitioner's * * * work experience" and which shows petitioner's employment from December 1975 through September 1976, as in the table. At trial, petitioner testified that (1) he began to work for Basler in February 1976, (2) his Basler work ended in May 1976, (3) he "took two weeks off", (4) he then worked for Dynamics Controls in Hartford, Connecticut, for six weeks, (5) he then worked for General Electric in Burlington, Vermont, for two weeks, and (6) he then worked for Westinghouse in Baltimore, Maryland, for four months. This would mean that his Westinghouse work began in June or July 1976 and ended in October or November 1976. ***** The parties' stipulated exhibit shows petitioner's employment from November 1976 through September 1977, as in the table. At trial, petitioner testified that his Chrysler work began in "December of '76 -- right before Christmas", and that he "stayed there three months"; presumably, this means until February or March 1977. However, he also testified that he left Chrysler in order to work for Harris, where he stayed four to five months; presumably this would place his stay at Harris beginning February or March 1977 and ending June or July or August 1977.
3. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. The "priority-ordering directive" of § 161--or, for that matter, § 261" ( Commissioner v. Idaho Power Co.,418 U.S. 1, 17↩ (1974)) is overridden by the specific language of section 262.
4. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *↩
5. In James v. United States,308 F.2d 204, 207-208 (CA9 1962), it was stated: For these reasons it has generally been held that the taxpayer cannot be "away from home" within the meaning of Section 23(a)(1)(A) unless he has a "home"; or the same result is reached by holding that the "home" of a taxpayer without a fixed and permanent abode is located wherever the taxpayer happens to be. And we think the better reasoned authority holds that a taxpayer has a "home" for this purpose only when it appears that he has incurred substantial continuing living expenses at a permanent place of residence. [Footnote references omitted.]
6. T.C. Memo. 1974-160↩.
7. T.C. Memo. 1966-206↩.