ALLAN C. DEAMER and SHARON L. DEAMER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Deamer v. Commissioner
Docket No. 9979-80.
United States Tax Court
T.C. Memo 1984-63; 1984 Tax Ct. Memo LEXIS 609; 47 T.C.M. (CCH) 1051; T.C.M. (RIA) 84063; February 8, 1984. Allan C. Deamer, pro se. Albert Russo, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined a deficiency in petitioners' Federal income taxes for taxable year ending December 31, 1976, in the amount of $1,260. After concessions, the sole issue for decision herein is whether certain travel expenses, including expenses for meals and lodging, were incurred by petitioner during 1976 while he was "away from home" whithin the meaning *610 of section 162(a)(2). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation and the exhibits attached thereto are incorporated by this reference. Allan C. Deamer (hereinafter referred to as "petitioner") and Sharon L. Deamer were husband and wife (hereinafter referred to, collectively, as "petitioners") and residents of Lake St. Louis, Missouri at the time of filing their petition herein. Petitioners timely filed a joint Federal income tax return for taxable year 1976, with the Internal Revenue Service Center in Kansas City, Missouri. At least between 1969 and the middle of 1981, petitioner was employed as a contractual consultant engineer (hereinafter referred to as "contract engineer") in the aircraft industry. In general, a contract enginerr works for different contract service firms on short-term assignments at various client companies. An individual contract assignment *611 generally lasts from eight to twelve months, but many last for two years or longer. During the period 1969 through 1981, petitioner was employed at a number of locations, by a number of different contract service firms serving client companies, as follows: Table 1. Petitioner's Employment
Location of
Date of
Date of
Contract Service
Client
Employment
Arrival
Departure
Firm
Company
Bethpage, Long
2/69
7/70
Arde Technical
Grumman Aircraft
Island, New York
Services
Engineering Corp.
Unemployed
8/70
12/70
None
None
Long Island,
[2] 12/70
2/71
[3]
New York
Farmingdale,
2/71
9/71
LPL Technical
Fairchild Hiller-
New York
Services Inc.
Republic Aircraft
Division
Unemployed
9/71
10/71
None
None
Jamaica,
10/71
5/72
LPL Technical
Lockheed Aircraft
New York
Services Inc.
Service Co.
Connecticut
5/72
12/74
Consultants and
Pratt and
Designers, Inc.
Whitney, Inc.
Grand Prairie,
12/74
5/75
Arde Technical
LTV Aerospace
Texas
Services
Corp.
Unemployed
5/7/75
6/16/75
None
None
New Orleans,
6/16/75
2/13/76
Argo Services,
Bell Aerospace
Louisiana
Inc.
Co.
Unemployed
2/14/76
3/28/76
None
None
El Segundo,
3/29/76
5/16/76
Kirk-Mayer,
North American-
California
Inc.
Rockwell
St. Louis,
5/17/76
6/11/77
Kirk-Mayer,
McDonnell
Missouri
Inc.
Douglas
St. Louis,
6/13/77
4/79
Self [4]
McDonnell
Missouri
Douglas
Bethpage, Long
4/79
9/79
General Devices
Grumman
Island, New York
Aerospace
St. Louis,
9/79
1/31/81
Self
McDonnell
Missouri
Douglas
2/1/81
2/9/81
Unemployed
2/10/81
3/1/81
None
None
3/2/81
3/4/81
Bethpage, Long
3/5/81
5/17/81
Kirk-Mayer,
Grumman
island, New York
Inc.
Aerospace
*612 While employed at Bell Aerospact Co. by Argo Services, Inc. from June 16, 1975, to February 13, 1976, petitioner was entitled to and was paid by the latter an allowance of $56 per week. While employed at McDonnell Douglas by Kirk-Mayer, Inc. from May 17, 1976 to June 11, 1977, petitioner was entitled to and was paid by the latter an allowance of $56 per week. To the extent that such allowances were received in 1976, they were reported as income by petitioner on his Federal income tax return for that year. For an undisclosed period during 1976, ending prior to August 1976, petitioner Sharon Deamer was employed as a receptionist at D.H. Holmes Co., Ltd., in New Orleans, Louisiana, where she received wage income *613 in the amount of $1,601. During the period reflected in Table 1, petitioner resided in the following locations: Table 2. Residence of Petitioner
Date of
Date of
Arrival
Departure
Location
2/69
5/69
Long Island, New York
5/69
7/69
Bergenfield, New Jersey
7/69
5/72
Central Islip, [5] New York
5/72
12/74
East Hartford, Connecticut
12/74
6/16/75
Arlington, Texas
6/16/75
2/13/76
New Orleans, Louisiana
2/14/76
3/28/76
[6]
3/29/76
5/16/76
El Segundo, California
5/17/76
4/79
St. Louis, Missouri
4/79
9/79
Central Islip, New York
9/79
1/31/81
St. Louis, Missouri
2/10/81
3/1/81
Bergenfield, New Jersey
3/5/81
5/17/81
Bethpage, Long Island, New York
During the period reflected in Table 1, petitioner's wife and children resided in the following locations: Table 3. Residence of Petitioner's Family
Date of
Date of
Arrival
Departure
Location
2/69
7/69
Bergenfield, New Jersey
7/69
9/73
Central Islip, New York
9/73
2/23/75
East Hartford, Connecticut[7]
2/23/75
8/1/75
Arlington, Texas
8/75
7/4/76
New Orleans, Louisiana
7/4/76
5/17/81
St. Louis, Missouri
*614 In addition to the residences reflected in the foregoing tables: (1) Between May 1972 and September 1973, when petitioner resided at East Hartford, Connecticut, he spent weekends with his family in Central Islip, New York; (2) petitioners and their children went to New Jersey during petitioner's unpaid layoff from Bell Aerospace during the last two weeks of December 1975; (3) petitioners and their children went to New Jersey during layoffs of approximately ten days each in December 1976, and December 1977; and (4) petitioner's family went to New Jersey in July 1976, to visit residential property they owned in Central Islip, New York. During their periods of residence in Bergenfield, New Jersey, as reflected in the foregoing tables, petitioners resided at a house which was owned and occupied by petitioner's parents. After May 1972, when he was employed at Pratt and Whitney, Inc. in Connecticut, petitioner made many attempts to secure employment *615 in the New York metropolitan area. As reflected in Table 1, these efforts were successful only in April 1979, and in March 1981, when he was employed at Grumman Aerospace on Long Island, New York. During 1976, the tax year in issue, petitioners registered to vote in Missouri, filed state income tax returns in Louisiana, California and Missouri, but not in New York or New Jersey, and maintained bank and/or individual retirement accounts at six banks, located in Connecticut, Louisiana, California, Missouri and New Jersey. Also during 1976, petitioners subscribed to health insurance through Blue Cross and Blue Shield of New Jersey and Mrs. Deamer retained her New Jersey driver's license. During the period 1970 through 1980, petitioners had children, the number of whom are undisclosed on this record, who were enrolled in schools in the following locations: Table 4. Schools
From
To
Location
9/70
6/73
Central Islip, New York
9/73
6/74
Cromwell, Connecticut
9/74
2/75
Cromwell, Connecticut
2/75
5/75
Arlington, Texas
9/75
5/76
Metairie, Louisiana
8/76
5/77
Wentzville, Missouri
8/77
5/78
Wentzville, Missouri
8/78
5/79
Wentzville, Missouri
8/79
5/80
Wentzville, Missouri
*616 In 1973, petitioners and their children attended a church located in Central Islip, Long Island. Thereafter, and through 1980, petitioners and their children attended the local Catholic church in whichever location they resided. During their periods of residence in Central Islip, New York, as reflected in the foregoing tables, petitioners resided in a house located at 82 Snowberry Lane which they had purchased in February 1969. Between February 1975, and May 1980, petitioners rented this residential property pursuant to a number of leases and/or lease renewals, as follows: Table 5. Leases on 82 Snowberry Lane
Lease Execution
Lease Term
Lease Term
Monthly
Date
Begins
Ends
Rental
January 1975
February 1, 1975
January 31, 1976
$325
January 31, 1976
February 1, 1976
January 31, 1977
$375
January 31, 1977
February 1, 1977
January 31, 1978
$375
(Renewal)
January 31, 1978
February 1, 1978
January 31, 1979
$375
(Renewal)
January 31, 1979
February 1, 1979
April 30, 1979
$410
August 31, 1979
September 1, 1979
May 31, 1980
$535
From April 1979, to September 1979, while he worked at Grumman Aerospace in Bethpage, Long Island, *617 New York, petitioner resided at 82 Snowberry Lane, sharing his house with tenants who paid a reduced rental during that period. In addition to the house in Central Islip, Petitioners purchased a house in Missouri in 1979, which was leased to tenants at the time of the trial in this matter. On their Federal income tax return for tax year 1976, petitioners reported total wage income in the amount of $32,765.08, and claimed deductions for employee business expenses relating to petitioner's employment during that year at Bell Aerospace Co. in New Orleans, Louisiana, North American Rockwell in El Segundo, California, and McDonnell Douglas in St. Louis, Missouri in the respective amounts of $722.00, $1,315.25, and $3,535.13, for a total of $5,572.38, computed as follows: Table 6. Business Expenses Claimed
Expenses
Louisiana
California
Missouri
Lodging
Apartment rental
[8] $590.00
Lodging & meals
$727.80
$2,719.19 Storage
[9] 132.00
Automobile
453.00
563.10 Laundry/dry cleaning
26.60
125.40 Telephone
107.85
46.94 Airfare
214.50 Reimbursement by employer
(134.00)
Totals
$722.00
$1,315.25
$3,535.13 *618 Also on their return for tax year 1976, petitioners claimed a loss in the amount of $1,528.95, for rental of their residential property at 82 Snowberry Lane, computed as the difference between their $4,450.00 in rental receipts, and the sum of their $724.68 claimed depreciation deduction and $5,254.27 "other expense" deductions for that year. All of the expenses claimed on their 1976 tax return were incurred and paid by petitioners. By notice of deficiency dated March 19, 1980, respondent disallowed the entire $5,572.38 in business deductions claimed by petitioners, but allowed petitioners both an additional depreciation deduction in the amount of $208.78, and a deduction for certain expenses of petitioner's move from California to Missouri in the amount of $524.33. [10]
*619 By timely petition herein, petitioners challenged respondent's disallowance of the foregoing $5,572.38 in business deductions, [11] and asserted their entitlement to additional business expense deductions for 1976, relating to petitioner's expenses for food in Louisiana and Missouri in the respective amounts of $244.50 and $1,102.60, as well as an additional business expense deduction of $362.61 for "removal of personal belongings" from New Orleans, Louisiana to St. Louis, Missouri. At trial, respondent conceded petitioner's moving expense deduction of $362.61, for rental of a truck relating to his move from New Orleans to Missouri. ULTIMATE FINDINGS OF FACT At no time during 1976 was petitioner's home for purposes of section 162(a)(2), in the New York metropolitan area. [12] Rather, petitioner's home for such purposes traveled with him to each place of his employment during that tax year. *620 OPINION In the absence of specific provision therefor, deductions for personal expenses are disallowed under section 262. Section 162(a)(2), however, allows a taxpayer to deduct traveling expenses, including the costs of meals and lodging, if he can establish that they were: (1) Ordinary and necessary; (2) incurred while "away from home;" and (3) incurred in the pursuit of a trade or business. ; . The resolution of this case depends upon whether certain travel expenses were incurred by petitioner during 1976, while he was "away from home" within the meaning of section 162(a)(2). This presents a factual question, as to which petitioners have the burden of proof. ; ; Rule 142(a). This Court has consistently held that a taxpayer's "home" for purposes of section 162(a)(2), is the vicinity of his principal place of business or employment, and not where his personal residence is located, if such residence is located in a different *621 place from his principal place of employment. ; ; . An exception to this rule exists, however, where a taxpayer accepts employment away from his personal residence which is temporary as opposed to indefinite. ; , affg. a Memorandum Opinion of this Court. Under this exception, the taxpayer's "tax home" is found in the vicinity of his residence, rather than in the vicinity of his temporary employment and, therefore, he is regarded as "away from home" while working at such location. The purpose underlying this exception is to relieve the taxpayer of the burden of duplicate living expenses while at a temporary employment location, since it would be unreasonable to expect him to move his residence under such circumstances. Where the taxpayer has no fixed personal residence or abode in a real and substantial *622 sense, however, the purpose underlying the foregoing exception is inapposite, and the taxpayer's living costs at his place or places of employment will be nondeductible personal expenses, regardless of whether his employment was temporary or indefinite. See ; section 262. [13] In a long line of cases, traveling expense deductions have been denied where an itinerant taxpayer had no fixed personal residence or abode, thus taking his tax home with him to various locations. , affg. , cert. denied ; , affg. per curiam a Memorandum Opinion of this Court; ;; , affd. per curiam ; . Since *623 petitioner's tax home during tax year 1976 was in the New York metropolitan area, according to petitioners, they were entitled to deduct under section 162(a)(2), employee business expenses incurred and paid by petitioner while on temporary job assignments "away from home" in Louisiana, California and Missouril.Alternatively, petitioners maintain that petitioner's tax home during tax year 1976, was in Louisiana, up until July 4, 1976, when his family moved from Louisiana to Missouri, and that they were therefore entitled to deduct under section 162(a)(2), employee business expenses incurred and paid by petitioner while on temporary job assignments "away from home" in California (from March 29, 1976, to May 16, 1976) and in Missouri (from May 17, 1976, to July 4, 1976, when petitioner's family joined him in Missouri). According to respondent, on the other hand, petitioner was an itinerant, whose tax home for purposes of section 162(a)(2), traveled with him to each of his places of employment during 1976, thus precluding the "away from home" business deductions sought under either of petitioners' alternative theories. We agree with respondent. For the tax year in issue, neither petitioner *624 was at any time employed in the New York metropolitan area. Rather, petitioner was employed, until February 13, by Bell Aerospace Co. in New Orleans, Louisiana; between March 29, and May 16, by North American Rockwell in El Segundo, California; and from May 17, to the end of the year, by McDonnell Douglas in St. Louis, Missouri. Mrs. Deamer was employed during the first seven months of 1976, at D.H. Holmes Co., Ltd. in New Orleans, Louisiana. Petitioner generally resided in the places of his foregoing employment, and his family resided, up to July 4, 1976, in New Orleans, and for the rest of 1976, in St. Louis. During 1976, petitioner returned to New Jersey, with his family, solely during a 10-day layoff in December. Petitioner's family returned briefly to New Jersey, without him, during July 1976, to visit their property in Central Islip. During 1976, petitioners registered to vote in Missouri, filed state income tax returns in three different states, not including New York or New Jersey, and maintained bank and/or retirement accounts at banks in five states, including New Jersey. During 1976, petitioners' children attended schools located solely in Louisiana and Missouri, and *625 petitioner's family attended churches located in those two states. Aside from their brieff visits to petitioner's parents in New Jersey, petitioners' chief nexus with the New York metropolitan area during 1976, was their ownership of a house in Central Islip. As we have found, however, petitioners leased that house for the entirety of the tax year in issue receiving rental income therefor. Petitioners claimed depreciation and business expense deductions for that property in 1976. It appears to us that by 1976, the residential property at 82 Snowberry Lane had been converted into property held for the production of rental income. On this record, the mere fact that petitioners owned such property in New York during the year in issue is insufficient to tip the scale in their favor. [14]
*626 Nor does expansion of the foregoing examination to tax years beginning with 1972, when petitioner first left the New York area to accept employment in Connecticut, through 1981, disclose any substantially greater proclivity of petitioners for the New York area. Throughout this period, the peripatetic petitioners resided in seven different states for periods ranging from less than two months to almost three years, and petitioners was employed in a variety of contract engineering jobs in six different states, ranging in duration from approximately six weeks to two and one-half years. During this eight-year period, petitioner's employment in the New York area was restricted to two nonconsecutive jobs at Grumman Aerospace, totaling eleven months, during which time he lived in either New York or New Jersey. Following their departure from New York in September 1973, petitioner's family at no time during the foregoing period returned to reside in the New York area. Petitioners make much of their retention of health insurance coverage through Blue Cross and Blue Shield of New Jersey, and of Mrs. Deamer's retention of her New Jersey driver's license. Petitioners also emphasize that *627 petitioner's repeated, albeit generally unsuccessful, efforts to obtain employment in the New York area during the years under examination reflected their intention to return to "home" in New York. At trial, petitioner testified that his health insurance policy continued to cover him, at least in part, while he was living and working in California, Missouri and Louisiana. Neither retention of this policy nor Mrs. Deamer's retention of her driver's license in New Jersey suffice to establish a tax home in any real and substantial sense. [15] Furthermore, while we believe petitioner's testimony that he wished to return to the New York area, for purposes of section 162(a)(2), it is clear that wishing for a home doesn't make it so. See ; . [16]
Finally, contrary to their alternative argument, this record fails to demonstrate that petitioners' tax home was *628 in Louisiana during any part of 1976 when he was "away" from that state. Petitioner worked and resided in that state six weeks out of that year. Mrs. Deamer and her children resided in Louisiana until after the end of the school year in July 1976, when they departed for Missouri. After Mrs. Deamer's departure, Petitioners retained no residential property in Louisiana, and there is no indication herein either that they intended to, or ever did in fact return to that state. Our examination of the facts herein convinces us that petitioners fall within the ambit of those cases denying travel expense deductions where taxpayers, in essence, carry their tax homes along with them. In light of this conclusion, it was impossible for petitioners to be "away from home" during 1976, and their claims under section 162(a)(2), must fail. [17]
*629 To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references herein are to sections of the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all references to Rules are to the Tax Court Rules of Practice and Procedure, unless otherwise stated.↩
2. Where the dates of departure from one location and arrival at another are listed as being during the same month and year, the exact day of such departure and arrival are not disclosed in this record. ↩
3. Blank entries reflect locations, dates or places of employment which are disclosed neither in the stipulations of the parties nor elsewhere in this evidentiary record. ↩
4. The designation "self" reflects periods when petitioner contracted his own employment.↩
5. While Central Islip is situated on Long Island, New York, we have adhered herein to the town designations as stipulated to by the parties. ↩
6. Blank entries reflect undisclosed locations.↩
7. While the record does not disclose the town in Connecticut in which petitioner's family resided after petitioner's departure from East Hartford in December 1974, we assume that they maintained petitioner's residence in that town.↩
8. The $590 deduction claimed consisted of a rental of $295 for each of the two months, Janury and February 1976. ↩
9. The $132 deduction claimed consisted of storage expenses of $22 for each of the two months, January and February 1976, and an additional $88 for the period March through June 1976.↩
10. This allowance of $524.33, consisted of certain travel, meals and lodging expenses totaling $658.33, less $134, found to have been reimbursed by petitioner's employer.↩
11. As to the moving expense of $524.33, allowed by respondent for petitioner's move from California to Missouri, petitioners claimed "Error in reassigning $524.33 of employee business expenses * * * as moving expenses."↩
12. We accept petitioners' averment herein that all of their residences in New York and New Jersey may be characterized as being in the New York City metropolitan area.↩
13. See also .↩
14. We believe that petitioners' reliance on is misplaced. Holding that the taxpayer in Michaels had shown that he had a "home" to return to in Seattle following his temporary employment elsewhere, this Court relied upon taxpayer's retention of his furniture in the house in Seattle, and the combination of the limited one-year duration of the lease by which he rented his residence in Seattle, and↩ his justifiable expectation that he would be returning to Seattle at the end of such lease. We find absent herein any comparable compelling indications that petitioners' tax home was in the New York area. We find more pertinent to the present case a Memorandum Opinion, wherein this Court held that the ownership of rented residential property in the Denver, Colorado area by the taxpayer, a contract engineer, was insufficient to establish his tax home at that location where "he still harbored hopes of finding work opportunities in the Denver area," but such opportunities "were nonexistent or, at best, bleak." .
15. See . ↩
16. See also ; .↩
17. Petitioners urge our consideration herein of , wherein the taxpayer was a contract engineer and, they state, a colleague of petitioner's on the Pratt and Whitney job located in Connecticut (May 1972, through December 1974). It is sufficient to note that our decision in that case was predicated upon facts not present here; that is, retention by the taxpayer of a permanent residence at which his family remained while he was employed elsewhere during the tax years there in issue.↩