JERRELL R. WRIGHT AND EDWINA C. WRIGHT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wright v. Commissioner
Docket No. 6347-89
United States Tax Court
T.C. Memo 1991-280; 1991 Tax Ct. Memo LEXIS 324; 61 T.C.M. (CCH) 2959; T.C.M. (RIA) 91280; June 20, 1991, Filed *324 Decision will be entered under Rule 155. Donald M. Brown, for the petitioners. Sheila Olaksen and M. Catherine McKenna, for the respondent. PARR, Judge. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioners' joint individual Federal income tax as follows: Additions to tax
Taxable year
under sections
Ending
Deficiency
6653(a)(1)
6653(a)(2)
6661
December 31, 1984
$ 6,134
$ 307
*
$ 1,534
December 31, 1985
$ 4,759
$ 238
*
-0- Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the taxable years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are (1) whether petitioners are entitled to deduct from gross income the $ 15,435 and $ 10,935 per diem amounts received in 1984 and 1985, respectively, as expenses incurred "away from *325 home" under section 162(a) (2); (2) whether they are liable for additions to tax for negligence under section 6653(a)(1) and (2) for both years; and (3) whether they are liable for the addition to tax for substantial understatement of income tax under section 6661(a) for 1984. FINDINGS OF FACT Some of the facts are stipulated and found accordingly. The stipulation of facts and accompanying exhibits are incorporated herein. Petitioners resided in Sacramento, California (Sacramento), when they filed their petition in this Court. Unless otherwise indicated, all references to petitioner in the singular refer to Jerrell R. Wright. Employment information
Petitioner is a nondegreed mechanical engineer specializing in nuclear power. In or around 1976 he retired from the Navy after 22 years. Shortly thereafter, petitioner took a temporary job with Babcock & Wilcox and was assigned to a nuclear plant in Ohio. At that time petitioners resided in Sacramento. In October 1977 after his assignment at the plant was completed, petitioner was hired as a mechanical maintenance supervisor for the Washington Public Power Supply System (WPPSS) in the State of Washington. Petitioners moved *326 from Sacramento to Kennewick, Washington (Kennewick), where they bought a home around July 4, 1978. In December 1980 petitioner quit his job with WPPSS because of uncertainty whether WPPSS would continue building nuclear plants and, therefore, whether petitioner would remain employed. He interviewed with various companies in the Kennewick area to find a more secure job. The only job he was offered was with Health Physics Incorporated (HPI), a subsidiary of Quadrex (a California company that had jobs in the Kennewick area). Petitioner trained for 3 months (beginning in or around March 1981) at Battelle Northwest Labs in Washington State before he was assigned to HPI's home office in Gainesville, Florida. Petitioner's family remained in Kennewick. Around August 1981 a former coworker offered petitioner a job with Energy Inc. (Energy, now E.I. International, Inc.), whose home office was located in Idaho Falls, Idaho. Petitioner accepted, and on August 17, 1981, was assigned to the Davis Bessey Plant in Toledo, Ohio (Toledo plant), as "Modification Manager." Energy paid petitioner's living expenses for the first 10 days and, thereafter, authorized a per diem of $ 35 per day. Petitioner's *327 assignment to the Toledo plant initially was to last the duration of the refueling outage, approximately 8 months. Unfortunately, major problems developed and his assignment was extended through June 30, 1982. On May 28 or 31, 1982, petitioner's assignment and per diem terminated. Petitioner then worked in Energy's home office in Idaho until approximately July 21, 1982. Petitioner's family lived in Kennewick during this time and Mrs. Wright worked for Columbia Basic College. Petitioner returned to Kennewick monthly to visit his family and continued to look for a job in that area. On July 21, 1982, Energy, under a contract with the Arizona Public Service Company (APSC), assigned petitioner to the Palo Verde Nuclear Generating Station (PVNGS) in Arizona. Petitioner was designated "Lead Engineer" for the start-up project. Energy authorized the payment of reasonable relocation and living expenses. Petitioner's assignment was to last approximately 10 months, through May 21, 1983. Petitioner, however, requested that his assignment last only 6 months, because he wanted Energy to find him work in or around Kennewick. Mr. Bill Rozak, one of Energy's group vice presidents and petitioner's *328 boss, agreed to try to limit petitioner's stay in Arizona to 6 months. Nevertheless, Mrs. Wright quit her job in Kennewick and, taking the youngest of petitioners' three daughters, moved to Goodyear, Arizona, to be with petitioner. Petitioners rented a home in Arizona. Mrs. Wright did not seek employment in Goodyear, but attended school. Effective August 13, 1982, Energy terminated petitioner's temporary living expenses and instituted a per diem of $ 45 per day and mileage. In May 1983 petitioner's assignment to PVNGS was extended for an additional 11 months. Petitioner remained in Arizona although he objected to the extension. On March 16, 1984, the start-up portion of Energy's contract with APSC ended, along with petitioner's assignment, lead-pay, and per diem. Energy, however, authorized petitioner to receive training and overhead (T & O) expenses in addition to his regular base pay. Rather than returning to Energy's home office in Idaho, petitioner unsuccessfully attempted to locate a job in Washington. Within 5 days of his termination (March 21, 1984), petitioner was picked by APSC to work on a separate contract (Operations Engineering Contract) it had with Energy. *329 Energy reassigned petitioner to PVNGS as a configuration document supervisor to oversee the completion of some of the systems that were turned over to operations. The expected duration of this assignment was 11 months, beginning March 21, 1984, with $ 45 a day per diem. In February 1985 Energy extended petitioner's reassignment to PVNGS 11 more months. Around August 1985 a former co-worker at the Toledo plant asked petitioner to return to assist in getting the plant operational. Petitioner, wanting to leave Arizona, asked Energy to contract with the Toledo plant so he could remain employed with Energy but move out of Arizona. However, when Energy failed to get a contract, around August 1985 petitioner quit his job with Energy. It is not clear from the record whether petitioner actually returned to Ohio. It is known, however, that petitioners and their youngest daughter moved from Arizona to Sacramento. For the rest of 1985 petitioner worked for TAD Technical Services, headquartered in Cambridge, Massachusetts. Petitioners lived in Sacramento. Petitioner's Form W-2 from TAD indicates he received $ 38,963.75 wages, tips, and other compensation and the same in Social Security *330 wages.
Petitioners' Kennewick residence
In July 1982 while petitioners lived in Goodyear, Arizona, their two oldest daughters lived in petitioners' house in Kennewick with their aunt (petitioner wife's sister) and her family. Petitioners continued to pay the mortgage on their Kennewick home while the aunt paid them rent. In approximately June 1983 the aunt and her family moved. Thereafter, petitioners rented their house to unrelated third parties, but the rental income did not cover the expenses of maintaining the home. In or around July 1984 the tenants moved out of petitioners' house. By the latter part of 1984 jobs in the Kennewick area in petitioner's field were virtually nonexistent. In November 1984 petitioner, not expecting to obtain a job in that area, sold the Kennewick home. Tax return information
Petitioner's 1984 Form W-2 from Energy shows $ 52,679.28 in wages, tips, and other compensation, and $ 37,800 in Social Security wages. His 1985 Form W-2 from Energy shows $ 40,742.12 in wages, tips, and other compensation, and $ 39,600 in Social Security wages. Petitioner's mailing address for both Forms W-2 from Energy was 721 Calle Chulo, Goodyear, Arizona *331 85338. Petitioners consulted with and had their 1984 and 1985 returns prepared by tax return preparers. They discussed the 1984 per diem with the return preparer and were advised that petitioner's job assignment to Arizona was temporary, rather than indefinite. Petitioners failed to include the per diem in gross income for either year. Accordingly, respondent included the per diem in their income in the statutory notice of deficiency. Petitioners listed Goodyear, Arizona, as their address for purposes of reporting their 1984 Federal income tax liability, and Sacramento, California, for purposes of reporting their 1985 income tax liability. Petitioners' tax returns were timely filed for both years in issue. OPINION Section 162(a) (2) deductions
Petitioners claim their tax home for both years in issue is Kennewick, Washington (their personal residence), and that petitioner incurred deductible "away from home" expenses while temporarily employed and living in Goodyear, Arizona. Respondent contends petitioners are not entitled to deduct the per diem, because their tax home was Goodyear, Arizona. Alternatively, respondent contends that if we find petitioners' tax home to *332 be someplace other than Goodyear, Arizona, petitioners are, nevertheless, not entitled to deduct the per diem because their stay in Arizona was indefinite, rather than temporary. We agree with respondent's first contention. Per diem allowances paid to an employee are includable in gross income. Sec. 61. Personal living and family expenses are ordinarily not deductible. Sec. 262. However, section 162(a)(2) allows a taxpayer to deduct certain living expenses (i.e., travel, meals, and lodging) paid or incurred in pursuit of a trade or business while away from the taxpayer's tax home. See sec. 62(2)(B). This deduction applies only where a taxpayer, because of the travel requirements of his trade or business, must maintain two places of abode and, therefore, incur additional and duplicate living expenses. See United States v. Mathews, 332 F.2d 91 (9th Cir. 1964), citing James v. United States, 308 F.2d 204 (9th Cir. 1962); Barone v. Commissioner, 85 T.C. 462, 465 (1985), affd. without published opinion 807 F.2d 177 (9th Cir. 1986); Tucker v. Commissioner, 55 T.C. 783, 786 (1971); *333 Kroll v. Commissioner, 49 T.C. 557, 562 (1968). To satisfy section 162(a)(2), the taxpayer must establish that the expenses were: (1) Reasonable and necessary; (2) incurred while "away from home"; and (3) incurred in pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470, 90 L. Ed. 203, 66 S. Ct. 250 (1946); Barone v. Commissioner, supra; Foote v. Commissioner, 67 T.C. 1, 3 (1976). The expenses incurred by petitioner satisfy the first and third requirements. Accordingly, we need only decide whether petitioner was "away from home." As a general rule a taxpayer's "home," as used in section 162(a)(2), is his abode at or in the vicinity of his principal place of employment. Coombs v. Commissioner, 608 F.2d 1269, 1274 (9th Cir. 1979), affg. in part and revg. and remanding in part 67 T.C. 426 (1976). [1] *335 Cf. Barone v. Commissioner, supra.E.g., Mitchell v. Commissioner, 74 T.C. 578, 581 (1980). If, however, a taxpayer's employment at the principal place of work is "temporary," rather than "indefinite," the living expenses connected *334 with his temporary employment may be deductible, because his tax home will be considered his primary abode (i.e., personal residence). [2] *336 See Peurifoy v. Commissioner, 358 U.S. 59, 3 L. Ed. 2d 30, 79 S. Ct. 104 (1958); Coombs v. Commissioner, 608 F.2d at 1275-1276; Barone v. Commissioner, supra.If, however, a taxpayer does not maintain a home or "abode" other than in the location where he works, it is immaterial whether his employment there is temporary or indefinite, since those distinctions are relevant only when the taxpayer maintains a well-established home and is away from it. [3]United States v. Mathews, 332 F.2d at 93. Petitioners bear the burden of proving that during 1984 and 1985 petitioner had a well-established "tax home" in Kennewick to be away from while "temporarily" employed and living in Arizona. Welch v. Helvering, 290 U.S. 111, 115, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). See James v. United States, supra; Barone v. Commissioner, 85 T.C. at 465; Bochner v. Commissioner, 67 T.C. 824, 828 (1977). While the subjective intent of the taxpayer is considered in making this determination, this Court and others consistently have held that objective financial criteria bear a closer relationship to the underlying purpose of the deduction. Barone v. Commissioner, 85 T.C. at 465. E.g., Foote v. Commissioner, 67 T.C. at 4; Kroll v. Commissioner, 49 T.C. 557 (1968). It is clear from the facts of this case that Kennewick was not petitioners' "home" for purposes of section 162(a)(2) during the years in issue. First, *337 petitioner accepted employment away from Kennewick early in 1981. Although he returned to visit his family and continued to look for jobs in the area, at least through July 1985, he never resumed any type of work there (see Bochner v. Commissioner, 67 T.C. 824 (1977)). Moreover, by 1984 the prospect for work in that area was bleak, if not nonexistent. See Kaye v. Commissioner, T.C. Memo 1974-111. Second, the mere fact petitioners owned property in Kennewick is insufficient to establish that city as their tax home. [4] *338 Petitioner did not use the Kennewick house for lodging at any time during 1984; nor did any member of his family reside there during 1984. No one in petitioners' family could have used the house in 1985, because they no longer owned it. See Rev. Rul. 83-82, 1983-1 C.B. 45. Additionally, petitioners claimed depreciation on their "personal residence" in 1984. Thus, it appears to us that by the latter part of 1983 petitioners' residential property in Kennewick was converted into property held for the production of rental income. [5]
Further, in 1984 the Kennewick house was rented to third parties. Indeed, the only "abode" petitioners maintained in 1985 was in Goodyear, Arizona, since they sold their Kennewick house in November 1984. See United States v. Mathews, 332 F.2d 91 (1964). Thus, petitioners did not incur duplicate living expenses [6] as contemplated by the statute during the years in issue because they both lived in Goodyear, Arizona (until August 1985). See Rev. Rul. 83-82, supra. It is also important to note that petitioner earned most if not all of his income from his job in Arizona during the years in issue. See Montgomery v. Commissioner, 64 T.C. 175, 179-180 (1975), *339 affd. 532 F.2d 1088 (6th Cir. 1976). He had only one employer (Energy) before and during the years in issue, and from 1982 through August 1985 his services were performed entirely on APSC's projects in Arizona. See Mitchell v. Commissioner, 74 T.C. at 582-583. [7]
After reviewing the record and considering the policy behind the away-from-home provision, we find petitioners' contacts with Kennewick were insufficient for that city to constitute their tax home. See Bochner v. Commissioner, 67 T.C. at 827-828. *340 Accordingly, petitioner was not "away from home" for purposes of section 162(a)(2), and thus petitioners are not entitled to deduct the per diem received from Energy. [8]
Additions to tax
The next issue for decision is whether petitioners are liable for the additions to tax for negligence under section 6653(a)(1) and (2). Section 6653(a)(1) provides for an addition to tax if any part of an underpayment is due to negligence or intentional disregard of rules and regulations. Section 6653(a)(2) imposes an additional amount equal to 50 percent of the interest payable *341 under section 6601 on the portion of the underpayment attributable to negligence. Negligence is defined as a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 937 (1985). Petitioners bear the burden of proving they exercised due care and were reasonable in their reliance. Rule 142(a). Under the circumstances of this case, we find petitioners were not negligent. Accordingly, they are not liable for the additions to tax under section 6653(a)(1) or (2). The final issue for decision is whether petitioners are liable for the 25 percent addition for substantial [9] understatement of income tax under section 6661 for taxable year 1984. Petitioners bear the burden of proof on this issue. Rule 142(a). *342 An understatement is substantial if it exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. Sec. 6661(b)(1)(A). However, the amount of the understatement is reduced (for section 6661 purposes) by the portion of the understatement which is attributable to the taxpayer's treatment of an item for which there was "substantial authority," or if the relevant facts affecting the item's tax treatment are "adequately disclosed" on the return, or in a statement attached thereto. Sec. 6661(b)(2)(B)(i) and (ii). Under the facts and circumstances of this case, we find petitioners did not offer "substantial authority" for their understatement, or "adequately disclose" any facts affecting the tax treatment of the items in issue. Accordingly, we sustain respondent's determination as set forth in the notice of deficiency. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
*. 50 percent of the interest due on the entire deficiency.↩
1. Coombs v. Commissioner, 608 F.2d 1269, 1275 (9th Cir. 1979), affg. in part and revg. in part 67 T.C. 426 (1976) ("in general, as between various possible 'abodes,' the abode or at least the locale of the abode which is located in the vicinity of the taxpayer's principal place of business or employment, * * * will be considered the taxpayer's tax home for purposes of * * * section 162(a)(2)↩." 2. This is true only if the taxpayer has a personal residence or abode in a "real and substantial sense." Deamer v. Commissioner, T.C. Memo 1984-63, 1984 T.C. Memo 63, 47 T.C.M. (CCH) 1051, 1055, T.C.M. (RIA) 84063 at 239. See James v. United States, 308 F.2d 204 (9th Cir. 1962) (a taxpayer's permanent place of residence will be considered "home" for purposes of section 162(a)(2) if he has no "principal place of business," is currently working away from his permanent place of residence, and incurs substantial continuing living expenses at the permanent place of residence); Rev. Rul. 83-82, 1983-1 C.B. 45. Rev. Rul. 83-82, 1983-1 C.B. at 46, provides some factors that a taxpayer can use to show that the claimed tax home is his regular place of residence: (1) that the taxpayer used the tax home as his residence while working in that location immediately prior to the temporary employment; (2) that the taxpayer maintained business contacts in the location of the tax home during the temporary employment; (3) that the taxpayer incurred duplicate living expenses as a result of the temporary employment; and (4) that members of the taxpayer's family resided at the tax home during his absence or that the taxpayer continued to use the tax home frequently for lodging during the temporary employment. Although Revenue Rulings are not authority binding on this Court, Estate of Lang v. Commissioner, 64 T.C. 404, 406-407 (1975), affd. on this issue 613 F.2d 770, 776 (9th Cir. 1980), we may adopt the reasoning in them, Neuhoff v. Commissioner, 669 F.2d 291 (5th Cir. 1982), affg. 75 T.C. 36↩ (1980).
3. See Cavana v. Commissioner, T.C. Memo 1990-64↩.
4. See Deamer v. Commissioner, T.C. Memo 1984-63↩.
5. See Deamer v. Commissioner, see supra↩ note 4.
6. Although this factor is not necessarily determinative of the question of deductibility, we find it relevant in this case. See Michaels v. Commissioner, 53 T.C. 269, 275↩ (1969).
7. "When a taxpayer accepts employment either permanently or for an indefinite time away from the place of his usual abode, and chooses not to change his family residence, the taxpayer's tax home will shift to the new location--the vicinity of the taxpayer's new principal place of business." See Wills v. Commissioner, 411 F.2d 537 (9th Cir. 1969), affg. 48 T.C. 308 (1967); Owens v. Commissioner, 50 T.C. 577↩ (1968).
8. We note that the result reached would be the same had we found petitioners tax home was either Kennewick (see Harvey v. Commissioner, 283 F.2d 491 (9th Cir. 1960), revg. and remanding 32 T.C. 1368 (1959); Doyle v. Commissioner, 354 F.2d 480 (9th Cir. 1966), affg. a Memorandum Opinion of this Court; Kroll v. Commissioner, 49 T.C. 557↩ (1968)), or Idaho on January 1, 1984.
9. The Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002(a), 100 Stat. 1874, 1951, increased the section 6661(a)↩ addition to tax to 25 percent of the underpayment attributable to a substantial understatement for additions to tax assessed after October 21, 1986. Since the additions will not be assessed until the Court's decision is final, the 25-percent rate applies.